IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NICOLE L.,[1]

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Civ. No. 1:17-cv-01713-AA

OPINION & ORDER

AIKEN, District Judge:

Plaintiff Nicole L. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"). For the reasons set forth below, the decision of the Commissioner is REVERSED and REMANDED for immediate award of benefits.

## BACKGROUND

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on May 20, 2011, alleging disability beginning May 25, 2003. Tr. 16, 193. The application was denied initially and on reconsideration and a hearing was held by video conference at Plaintiff's request on December 12, 2013. Tr. 193. On January 17, 2014, the ALJ issued a decision finding that Plaintiff was capable of performing her past relevant work as a children's tutor and determining that Plaintiff was not disabled from the alleged onset date through March 31, 2007, which was Plaintiff's date last insured. Tr. 203-04.

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION & ORDER

Plaintiff sought review by the Appeals Council, which reversed and remanded the unfavorable decision. Tr. 208-11. In its ruling, the Appeals Council held that Plaintiff could not perform her past relevant work as a children's tutor with the limitations described in her residual functional capacity ("RFC"). On remand, the Appeals Council instructed the ALJ to: (1) further evaluate Plaintiff's mental impairments in accordance with the special techniques described in the regulations; (2) give further consideration to Plaintiff's maximum residual functional capacity and provide rationale with specific references to the evidence supporting the assessed limitations; (3) further evaluate Plaintiff's ability to perform past relevant work at Step 4 of the sequential evaluation and make appropriate findings; and (4) if necessary by the expanded record, obtain additional vocational expert testimony. Tr. 15, 209-10.

On remand from the Appeals Council, a second video conference hearing was held on November 9, 2015. Tr. 15. On May 18, 2016, the ALJ issued a decision finding that Plaintiff was not disabled between the alleged onset date and her date last insured. Tr. 28. The Appeals Council declined review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or

equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. As previously noted, Plaintiff's date last insured was March 31, 2007. Tr. 17. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date through the date last insured. *Id.* The ALJ determined Plaintiff had the following severe impairments: post-traumatic stress disorder ("PTSD"), depression, lumbar spine chronic compression deformity, and asthma. *Id.* The ALJ determined Plaintiff's impairments did not meet or equal a listed impairment. Tr. 18.

The ALJ determined Plaintiff had the RFC to perform light work with the following additional limitations: she can sit, stand, or walk for six hours in an eight-hour workday; she can occasionally climb stairs, ramps, ladders, ropes, and scaffolds; she can occasionally balance, stoop, kneel, crouch and crawl; she must avoid concentrated exposure to lung irritants including fumes,

odors, dust, gases, and poor ventilation; she can have occasional contact with co-workers and supervisors, but no interaction with the general public; she "should not work in an environment with the proper major changes at work, but is capable of tolerating normal and forewarn predictable changes [sic];" and "she requires a low stress job with few changes in work setting or work processes, no persuasive communication tasks, and no fast-paced production pace tasks." Tr. 20.

The ALJ noted Plaintiff was 31 years old on her date last insured and has at least a high school education and is able to communicate in English. Tr. 26. The ALJ found Plaintiff was unable to perform any of her past relevant work. *Id.* Based on her RFC, the ALJ determined Plaintiff was able to perform work as an electronic worker, electronics assembler, and mail clerk. Tr. 27. As a consequence, the ALJ determined Plaintiff was not disabled during the period between her alleged onset date and her date last insured. Tr. 27-28.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) failing to find Plaintiff's migraines to be a severe impairment and incorporating those limitations into Plaintiff's RFC; (2) improperly weighing the medical opinion evidence of Plaintiff's examining psychiatrist; (3) improperly rejecting Plaintiff's subjective symptom testimony; (4) improperly rejecting lay witness testimony; and (5) failing to include all of Plaintiff's limitations in the hypothetical question to the vocational expert ("VE").

### I.     Migraines

Plaintiff asserts that the ALJ erred by failing to include migraines as a severe impairment at Step 2 of the sequential analysis and failing to include the limitations caused by the migraines when formulating Plaintiff's RFC and the VE hypothetical.

A medically determinable impairment is "severe" at Step 2 of the sequential analysis if it significantly limits the individual's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). However, "Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). If the sequential analysis proceeds beyond Step 2, meaning that it has been resolved in the plaintiff's favor, the failure to

classify an impairment as severe will generally be harmless. *Id.* at 148. This is because Step 2 "is not meant to identify the impairments that should be taken into account when determining the RFC." *Id.* at 1048-49. "In fact, in assessing the RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* at 1049 (internal quotation marks and citation omitted, alterations normalized). "The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.*

As such, the ALJ's alleged error in failing to include migraines among Plaintiff's severe impairments is likely harmless. However, having found Plaintiff's migraines to be non-severe, the ALJ expressly declined to consider any limitations stemming from the migraines in formulating Plaintiff's RFC. *See* Tr. 25 ("As for migraines, as already discussed, the claimant's allegations of chronic migraines are not corroborated and I find this is not a severe impairment."). The alleged failure to consider the limitations imposed, even by non-severe impairments, would not be harmless error. *Buck*, 869 F.3d at 1048-49.

In this case, the ALJ found Plaintiff's migraine headaches to be non-severe. In making that determination, the ALJ noted:

> [T]he record identifies that the claimant has been diagnosed with migraine headaches, but the records do not reveal frequently occurring severe migraine pain with continuing treatment (3F). During the relevant period, migraines are referenced in the record as a condition and she was taking medication for the condition, but the chronicity reported by the claimant is not documented prior to the date last insured. If the claimant was having a migraine every two weeks, it is reasonable to assume she would have reported this to her primary care providers (See generally 3F showing the claimant was not actively seeking treatment for this condition during the relevant period aside from medication refills). She did not report chronic migraine symptoms until after the date last insured (4F/10). Prior to that, it is reasonable to assume the claimant's migraines were well-controlled with medication.

Tr. 18.

Page 6 – OPINION & ORDER

As a preliminary matter, the Court notes that this finding is not internally consistent. In essence, the ALJ held that Plaintiff failed to seek treatment for her migraines, other than the treatment she actually sought and received for the condition. It is not clear from the ALJ's opinion what additional treatment Plaintiff could or should have sought for her migraines.

The record indicates that Plaintiff was diagnosed with migraines near the end of her military service. Tr. 795-96. Plaintiff described her headaches in 2003, as reflected in a later-compiled report, as follows: She experienced temporary relief when treated with Cafergot and Inderal, but had better results with Imitrex. Tr. 796. Plaintiff reported that her migraines are "severely prostrating," and are associated with nausea and sometimes vomiting. *Id.* When she has a migraine, Plaintiff experiences photophobia and must lock herself in a dark room until the migraine passes. Tr. 796-97. Plaintiff reported suffering a least one migraine headache per week and that each episode lasts between two and twenty-four hours. *Id.* FNP Caroline Dryland examined Plaintiff in 2010 as part of a VA compensation and pension process and opined that Plaintiff would experience increased absenteeism, decreased concentration, poor social interaction, difficulty following instructions, decreased mobility and manual dexterity, problems with lifting and carrying, difficulty reaching, speech difficulty, vision difficulty, lack of stamina, weakness or fatigue, and pain as a result of her migraines. Tr. 800. Dryland opined to the VA that Plaintiff was unable to sustain employment at that time and "is essentially unemployable in the general work force" as a result of her migraines, although Dryland suggested that Plaintiff might be able to function in a sheltered work environment. Tr. 801-02.

Although this record was generated after the date last insured, it represented the VA's assessment of Plaintiff's migraine condition going back to 2003. Plaintiff was also examined by Dr. Linda Sidwell in June 2003, during which Plaintiff reported that she was taking Imitrex for her

migraines, but that she continued to experience headaches two to three times per week, lasting between two and nine hours. Tr. 718. The migraine diagnosis appears throughout Plaintiff's treatment notes. Tr. 571 ("Com. Migraine w/o intractable."); 567 (same); 642-43 (listing "Migraine HA" among Plaintiff's conditions in December 2004 and prescribing Imitrex). Plaintiff also reported chronic, severe migraines "which are recurrent and very frequent" during a psychiatric examination in February 2006. Tr. 519. The Commissioner points out that migraines do not appear among Plaintiff's list of complaints when she sought a new treatment provider in January 2007, Tr. 565, but the ALJ acknowledged that Plaintiff received refills for migraine medication during the relevant period. This clearly demonstrates that Plaintiff's medical providers were aware of her migraine condition and were providing her with treatment for it.

On this record, the Court concludes that the ALJ's determination that Plaintiff was either not seeking treatment for her migraines or that her migraines were well-controlled with medication is not supported by substantial evidence. The ALJ erred by failing to consider the limitations imposed by Plaintiff's migraines in formulating Plaintiff's RFC.

The medical opinion evidence from the relevant period suggests, at the very least, that Plaintiff would experience increased absenteeism as a result of her migraines. During the hearing, the VE testified that competitive employment would not permit more than perhaps one absence per month. Tr. 154. The Court therefore concludes that the error was not harmless.

## II. Medical Opinion Evidence

Plaintiff asserts that the ALJ erred by failing to properly credit and incorporate the medical opinion of examining psychiatrist Pavitar S. Cheema, M.D.

The ALJ is responsible for resolving conflicts in the medical record. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). "As a general rule, more weight should be given to the

opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

In this case, Dr. Cheema examined Plaintiff on February 10, 2006. Tr. 518. Dr. Cheema noted Plaintiff was tearful, anxious, and depressed during the exam and displayed retarded psychomotor activity. Tr. 520. Dr. Cheema diagnosed moderate-to-severe major depressive disorder and assessed a GAF of 60. Tr. 521. Dr. Cheema opined that Plaintiff would have moderate difficulty interacting with the public, co-workers, and supervisors, as well as "moderate difficulty handling the stress and pressure associated with an eight hour a day job." *Id.* Dr. Cheema believed that the stress of a regular job would lead to "repeated deterioration of her emotional status." *Id.* She would have mild-to-moderate problems dealing with changes in a routine work setting and would be able to remember, understand, and carry out simple job instructions. *Id.* She would be able to perform simple, repetitive tasks. *Id.*

The ALJ gave "substantial weight" to Dr. Cheema's opinion, finding that it was consistent with Plaintiff's VA treatment records and other evidence in the record. Tr. 24. Specifically, the ALJ noted that Dr. Cheema's opinion was consistent with contemporary VA psychiatric reports which "revealed significant difficulty with concentration and stress tolerance due to combined mental and medical impairments." Tr. 25.

Plaintiff asserts that the ALJ erred by failing to incorporate the limitation to simple, repetitive tasks, or Dr. Cheema's finding that the stress of a regular job would result in repeated deterioration of Plaintiff's emotional status, despite according substantial weight to Dr. Cheema's opinion

The ALJ did not simply ignore Dr. Cheema's opinion. Instead, it was incorporated into Plantiff's RFC in terms of limitations on her ability to interact with coworkers, supervisors, and the public, as well as the limitation to a "low stress job with few changes in work setting or work processes, no persuasive communication tasks, and no fast-paced production pace tasks." Tr. 20. Plaintiff asserts that this fails to meet the standards reflected in SSA 85-15, which requires a thorough and individualized evaluation. SSA 85-15, *available at* 1985 WL 56857, *5-6.

On this record, the Court concludes that the ALJ adequately translated the limitations assessed by Dr. Cheema into concrete, functional terms. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). Courts should affirm such translations if they are supported by substantial evidence and free of legal error, even if the evidence is susceptible to more than one rational interpretation. *Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2017).

With respect to Dr. Cheema's opinion limiting Plaintiff to simple instructions and simple, routine tasks, the Commissioner concedes that the ALJ failed to incorporate that limitation into Plaintiff's RFC. Nevertheless, the Commissioner contends that the error was harmless. In *Zavalin v. Colvin*, 778 F.3d 842 (9th Cir. 2015), the Ninth Circuit held that a limitation to "simple, repetitive tasks" was inconsistent with the demands of a position that required GED reasoning level of three or more. *Id.* at 847. A limitation to simple or repetitive tasks is, however, consistent with a GED reasoning level of two. *Rounds v. Comm'r*, 807 F.3d 996, 1004 n.6 (9th Cir. 2015).

In this case, two of the jobs identified by the VE and relied upon by the ALJ, electronics assembler and electronics worker, require a GED reasoning level of two. DOT# 729.687-010, *available at* 1991 WL 679733 (Assembler, Electrical Accessories I); DOT# 726.687-010, *available at* 1991 WL 679633 (Electronics Worker). The Commissioner concedes that mail clerk, DOT # 209.687-026, *available at* 1991 WL 671813, requires a GED reasoning level of three and so exceeds the erroneously excluded limitation to simple, repetitive tasks. Despite the elimination of the mail clerk position, the remaining positions are consistent with the limitation to simple, repetitive tasks identified by Dr. Cheema. The ALJ's error is therefore harmless.

### III. Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle*, 533 F.3d at 1160.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, or a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

At the hearing, Plaintiff testified that she suffered from a host of serious injuries, including foot drop, as a result of serious car accident. Tr. 57. Plaintiff testified to stomach issues and that she struggled with the side effects of her pain medication. Tr. 59, 61. Plaintiff testified that she was unable to lift her thirteen-pound dog and that she avoids lifting weight as much as possible. Tr. 63. Plaintiff testified that she could not have lifted twenty pounds in 2007. Tr. 64. Plaintiff testified that she "literally cannot get comfortable" and must move around frequently. Tr. 64-65. Plaintiff suffers from abdominal pain and back pain. Tr. 69. Plaintiff testified that she is unable to stand in place for long enough to empty a dishwasher and that she would not be able to stand for six hours in an eight-hour shift. Tr. 87-88.

With respect to her migraine headaches, Plaintiff testified that she continued to suffer from migraines and that no medication had proven effective. Tr. 89-90, 92. Plaintiff testified that her migraines occurred on a weekly basis and that they were debilitating. Tr. 91. She testified that she cannot tolerate light during her migraines and that she must sit in silence and darkness until they pass. *Id.* Plaintiff testified that the migraines would persist for at least four hours and up to a full day. Tr. 92.

With respect to her mental impairments, Plaintiff testified that she was no longer taking psychiatric medication because she had "run the gamut on those pills" and found that they either did not help or were accompanied by dangerous side effects. Tr. 66-67. Plaintiff testified that she experiences anxiety and that she relies on her mother to do most of the shopping for their household. Tr. 73-74. Plaintiff testified that she finds it difficult to be out of the house and spends most of her time indoors at home and that her socialization is largely limited to internet communication. Tr. 75-78. Plaintiff testified that she struggles with stress and that when she

encounters difficulties she has a hard time managing her anxiety and anger, which can lead her to lash out. Tr. 79-80.

The ALJ gave a number of bases for rejecting Plaintiff's subjective symptom testimony. Among these was that Plaintiff reported using a walker and a cane and her statement that the walker was given to her by a hospital. Tr. 23-24, 418. The ALJ noted that there was no evidence that a walker had ever been prescribed. The unprescribed and unwarranted use of assistive devices is a valid consideration in an ALJ's credibility analysis. *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012).

With respect to the walker, Plaintiff's symptom report does not suggest that the walker was prescribed or used as a long-term mobility aid. Rather, Plaintiff described the use of the walker in the past tense and reported that it was given to her by the hospital following a serious car accident. Tr. 418 ("I had a walker and then a cane- the walker was given to me by the hospital . . . when I was in my accident."). In the check box section, Plaintiff indicated that she used a cane, but left the check box for a walker blank. *Id.* Notably, Plaintiff does not claim or even suggest that the cane was prescribed by a treatment provider and reports that she uses it only when her conditions are acting up or when she is "really sick." *Id.* This is consistent with the report of Plaintiff's ex-husband Jonathan S., who stated that Plaintiff "rarely" used a cane and did not use any other assistive devices. Tr. 426. The Court concludes that the ALJ's consideration of Plaintiff's rare, unprescribed use of a cane and temporary post-accident use of a walker is not supported by substantial evidence.

The ALJ noted that, although "there is not much in the record relating to [Plaintiff's] activities of daily living prior to the date last insured," Plaintiff did go on a trip to Disneyland in 2004. Tr. 24, 642. During that trip, Plaintiff "surprised herself she did relatively well where she

didn't have worsening of [lower back pain] after walking all day." Tr. 642. "She was not confined in the bedroom and did fairly well even after the trip." *Id.* Focusing on an isolated incident in which Plaintiff was able to go to Disneyland without either experiencing a worsening of pain or being confined to her bed does not strike the Court as clear and convincing evidence for discounting Plaintiff's testimony. Furthermore, as Plaintiff points out, she does not suffer migraines every day and so isolated consideration of a single day is suggestive of improper cherry-picking. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

The ALJ also pointed to an examination during which "the doctor noted exaggerated symptomatology with positive Waddell testing, and exaggerated pain behavior." Tr. 23. Poor effort or lack of cooperation during examinations is a valid consideration in an ALJ's credibility determination. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). In the present case, the examination in question was performed by a Christine Campton, a nurse practitioner, and not a doctor, as the ALJ's opinion states. Tr. 600-03. In the report, the nurse noted "Waddell Testing was positive for distraction testing, painful axial loading, non-anatomic tenderness, over-reaction, and painful pelvic-shoulder rotation." Tr. 600. The nurse also reported that Plaintiff "exhibited more grimacing, guarding, and holding on to objects for support than patients with similar conditions." *Id.* Significantly, the nurse did not report either poor effort or a lack of cooperation.

The Waddell test "establishes five 'signs' of nonorganic sources of lower back pain and does not distinguish between malingering and psychological conditions." *Wick v. Barnhart*, 173 F. App'x 597, 598 (9th Cir. 2006). "Notably, the Ninth Circuit has raised considerable doubt about the adequacy of 'Waddell tests' to establish a claimant's malingering in recent years." *Castro v.*

*Colvin*, Case No. CV 15-4594 MRW, 2015 WL 9470939, at *2 (C.D. Cal. Dec. 28, 2015). "To have practical meaning and constitute substantial evidence in the disability context, a physician must typically identify the number of Waddell signs observed and ascribe significance to those signs." *Id.* at *3 (internal quotation marks and citation omitted, alterations normalized). The Ninth Circuit has rejected Waddell signs when the source fails to identify either the number of signs or "whether they were attributable to malingering rather than psychological conditions." *Wick*, 73 F. App'x at 598. In this case, the nurse described the positive signs but does not discuss whether those signs are attributable to malingering[2] or to Plaintiff's well-documented and accepted psychological conditions. The Court concludes that the ALJ erred in his consideration of Plaintiff's Waddell test in assessing her credibility.

The ALJ also pointed to a failure to follow up on referrals to physical therapy. Tr. 22 ("There is no evidence of record the claimant ever followed up the physical therapy recommendations[.]"). A medical record from September 2005 indicates that Plaintiff was seen by a physical therapist and "tried TENS unit for which she found helpful." Tr. 625. The same examination indicates that Plaintiff would "continue use TENS at home." Tr. 627. During a follow up in October 2005, Plaintiff was re-referred to physical therapy "for TENS unit (she lost the TENS unit she had before)." Tr. 624. This is suggestive of Plaintiff's continued use of a physical therapy regimen she found helpful, rather than an unexplained failure to follow treatment directions.

The ALJ also noted that Plaintiff's asthma appeared to be well-controlled by medication, despite an asthma-related hospitalization. Tr. 22. The record indicates that Plaintiff experienced severe asthma problems in 2003, but it appears that this was due to poor medication adherence,

---

[2] There is no finding of malingering in this case.

which both Plaintiff and her physicians attributed to memory problems caused by her pain medication. Tr. 675, 678-79. The ALJ's opinion and the record reflect that Plaintiff continued to be prescribed pain medication throughout the relevant period. Tr. 22. Plaintiff also testified that she was on high doses of medication through 2007. Tr. 64. On this record, the Court cannot conclude that the efficacy of Plaintiff's asthma medication constitutes clear and convincing evidence for rejecting her subjective symptom testimony.

Finally, the ALJ found that Plaintiff's claims concerning her mental and physical impairments were not fully supported by the objective medical evidence. Tr. 21-22. While a lack of medical evidence is a valid consideration in the ALJ's credibility analysis, it "cannot form the sole basis for discounting pain testimony." *Burch*, 400 F.3d at 681. In this case, the Court has rejected the other bases for the ALJ's negative credibility determination. An inadequacy of supporting objective medical evidence cannot, standing alone, sustain the ALJ's credibility determination.

On this record, the Court concludes that the ALJ erred by failing to provide clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

### IV. Lay Witness Testimony

Plaintiff contends that the ALJ erred by rejecting the lay witness testimony of Plaintiff's ex-husband, Jonathan S. Lay witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ's reasons for rejecting a lay witness's testimony must also be "specific." *Stout*, 454 F.3d at 1054. When "the ALJ's error lies in a failure to properly discuss competent lay witness testimony favorable to the claimant, a reviewing court cannot consider the error harmless

unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* at 1056.

In this case, Jonathan S. submitted a third party function report in July 2011. Tr. 420. In his report, Jonathan S. reported that Plaintiff suffers from spasms in her back and legs, weak hands, shingles, and an inability to sit or stand for long periods. *Id.* He reported that Plaintiff has trouble with putting on socks, shoes, and necklaces; that she needs to sit in the shower and that he sometimes has to help her wash her hair. Tr. 421. He reported that she needs reminders to take her medication, if a pill needed to be taken more than once per day. Tr. 422. He reported that she has difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, completing tasks, and using her hands, as well as problems with her memory. Tr. 425. He reported that she could walk for five to ten minutes before needing to stop and rest. *Id.* He reported that she does not handle stress or changes in her routine well and that she will use a cane on rare occasions. Tr. 426.

The ALJ rejected Jonathan S.'s testimony because "he conceded that he did not know [Plaintiff] until shortly before her date last insured, and his description of her pain limitations were quite general." Tr. 26. With respect to the first issue, Plaintiff's date last insured was March 31, 2007. Tr. 17. In his July 2011 report, Jonathan S. said that he had known Plaintiff for five years, or since approximately July 2006. Jonathan S. admitted that he was not familiar with Plaintiff's condition before her onset date and was therefore unable to make a comparison between her condition at the time of the report and her condition before the onset of her impairments. Tr. 421. He did, however, know Plaintiff during the relevant period and his lay witness testimony is entitled to consideration on that basis. The Court therefore concludes that the ALJ's first reason for rejecting Jonathan S.'s report is not sufficiently germane.

With respect to the second basis, that Jonathan S.'s pain report was "quite general," the Court is not convinced. Although his report lacks the specificity of a medical source, Jonathan S. did describe a number of concrete limitations to Plaintiff's ability to function, such as difficulty putting on shoes and socks or an inability to walk for long periods of time. Jonathan S.'s report concerning Plaintiff's difficulty managing stress or changes in routine is consistent with other medical evidence in the record, such as the report of Dr. Cheema, discussed in the previous section.

On this record, the Court concludes that the ALJ erred by failing to give sufficiently specific, germane reasons for rejecting the lay witness testimony of Jonathan S. The Court further concludes that this error was not harmless.

## V. Remand

As the Court has concluded that the ALJ's determination contains non-harmless errors, it must determine whether remand should be for further proceedings or for award of benefits. The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Triechler v. Comm'r*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (internal quotation marks and citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy). The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1178 n.7 (9th Cir. 2000).

In the present case, the Court has already determined that the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's subjective symptom testimony and the lay witness testimony of Jonathan S. The Court has also determined that the ALJ erred by excluding the limitations associated with Plaintiff's migraines in formulating Plaintiff's RFC. The Court further concludes that the record is fully developed and that further administrative proceedings would serve no useful purpose. Consideration of the record leaves this Court in no doubt concerning disability. Accordingly, this case shall be remanded for an immediate calculation and award of benefits.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and REMANDED for immediate calculation and award of benefits.

DATED this 28th day of March, 2019.

---
ANN AIKEN
United States District Judge